**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-mj-565** |
| | : | |
| **Jeffrey Scott Brown,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**UNITED STATES' MOTION FOR EMERGENCY**
**STAY AND FOR REVIEW AND APPEAL OF A RELEASE ORDER**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully move this Court, first, to stay Defendant Jeffrey Brown's release pending trial, and, second, to hear an appeal to review and overturn a California Magistrate Judge's denial of the Government's motion for pre-trial detention.[1]  The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

Defendant was charged by complaint in United States District Court for the District of Columbia with Inflicting Bodily Injury on Certain Officers (18 U.S.C. §§ 111(a) and (b)) (including while using a dangerous weapon); Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Entering and Remaining in a Restricted Building or Grounds, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, and Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. §§ 1752(a)(1), (2), and (4); and Disorderly Conduct on Capitol Grounds, Impeding Passage Through the Capitol Grounds or Buildings, and Act of Physical Violence in the

---

[1] The government advised counsel for Defendant of its intent to file this motion; counsel for Defendant asked the government to note her objection in this filing.

Capitol Grounds or Buildings (40 U.S.C. § 5104(e)(2)(D), (E), and (F)) stemming from Defendant's involvement in the insurrection at the United States Capitol on January 6, 2021.

On August 26, 2021, FBI agents arrested Defendant at his residence in Santa Ana, California, and brought him before a U.S. Magistrate Judge in the Central District of California for an initial appearance and removal to this District. At a hearing after 2 p.m. PST/5 p.m. EST, the government orally moved for Defendant's detention pending trial. The U.S. Magistrate Judge denied the motion. The Government also requested a short, 24-hour stay to perfect its appeal of that order, and the Magistrate Judge denied it. From that order, the government hereby appeals and respectfully requests an emergency stay of the release order until this Court has a chance to review the appeal. Jurisdiction over this review and appeal lies in this Court, rather than a judge in California, pursuant to 18 U.S.C. § 3145(a)(1).

## I.    Factual Background

### A.    The Attack on the United States Capitol on January 6, 2021

The United States Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began

at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Michael Pence, who was also the President of the Senate, was present and presiding, first in the joint session and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.  As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and the U.S. Capitol Police were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers.  Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

During the violent protest, several individuals were wearing bulletproof vests and anti-tear gas masks, and some were armed with weapons including bats, pepper spray, sticks, and zip ties.  Also, during the protest, several law enforcement officers were assaulted and injured by these

violent protestors while attempting to protect the U.S. Capitol and the individuals inside of the building.  These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol.  The defendant, as detailed below, is charged with two instances of assault, as well as other criminal violations.

**B.      Jeffrey Brown's Plans to Go to DC**

During the course of the investigation of Jeffrey Brown, law enforcement identified communications about the planning and coordination to go to DC on January 6, 2021.  Brown was part of an encrypted messaging app chat on Telegram in the days leading up to January 6, 2021.  Brown participated in the chat under the username "JB," his initials.  The Telegram chat's "about" section stated: "This group will serve as the Comms for able bodied individuals that are going to DC on Jan 6. Many of us have not met before and we are all ready and willing to fight. We will come together for this moment that we are called upon."

On January 5, 2021, at approximately 6:30 a.m. PST, Telegram user "JB" posted a picture of himself with the caption "Boarding LAX."   LAX is the airport code for the Los Angeles International Airport.  The picture is below.



*Figure One*

On March 12, 2021, FBI Agents coordinated with the Los Angeles International Airport Residence Agency (LAXRA) attempting to identify "JB." LAXRA confirmed the photo was taken in LAX Terminal 1, which is serviced by Southwest Airlines. Law enforcement was able to identify possible flights which took off near the time of the photograph and review manifests for the initials "JB." Through this process, they identified "JB" as JEFFREY SCOTT BROWN, of Irvine, California. According to flight records, BROWN traveled from LAX to IAD (Washington, DC) on January 5, 2021 and returned to LAX on January 7, 2021. BROWN provided a telephone number ending in -9487 and email address jeffbrownXX@XXXXX.com on the reservation.

**C.      Jeffrey Brown Identified in FBI BOLO172-AFO**

In January 2021, the FBI's Washington Field Office initiated an investigation on BOLO172-AFO based on information BOLO172-AFO was involved in the assault of numerous federal officers in and around the Lower West Terrace during the breach of the Capitol building.

On July 1, 2021, FBI showed the seeking information poster and photographs of BOLO172-AFO to a WITNESS who has known BROWN for approximately four to five years, as depicted below in *Figures Two* and *Three*. The WITNESS identified BOLO172-AFO as BROWN.



*Figure Two*



*Figure Three*

### D. Jeffrey Brown's Assaults on Law Enforcement Officers

In the footage from January 6, 2021, Brown can be seen wearing a hat that was helpful in identifying him. The hat, pictured above, has cream/tan fleece and a black circle in the center, with a gold/tan football-shape inside of the black circle.

On January 6, 2021, between approximately 2:56 p.m. and 3:11 p.m., a man who matches Brown's description appeared on the U.S. Capitol CCTV footage in the Lower West Terrace. The Lower West Terrace Door was heavily guarded by law enforcement—including Metropolitan Police Department ("MPD") officers, who formed a defensive line to prevent unauthorized access into the U.S. Capitol via the Lower West Terrace tunnel.

On January 6, 2021, all parts of the Lower West Terrace were considered "restricted grounds" and not accessible to the public. The Lower West Terrace Door leads into the U.S. Capitol Building through a tunnel. The Lower West Terrace door is an outdoor area, on the west side of the U.S. Capitol Building. Defendant Brown was in the Lower West Terrace Tunnel of the U.S. Capitol during the violent insurrection, as seen below.



*Figure Four*

On January 6, 2021, between approximately 2:56 p.m. and 3:11 p.m., a man who matches Brown's description appeared on U.S. Capitol CCTV footage captured by a camera positioned at the Lower West Terrace Door, as depicted in *Figure Four* above.

At approximately 3:11 p.m., Brown can be observed in the tunnel along with a crowd of rioters, wearing a hat, as depicted in *Figure Five*. Brown can be seen towards the front group of rioters, near the police defensive line. Brown can be seen reaching through the crowd, towards another rioter, who provides Brown with what appears to be a spray-can. At approximately 3:11 p.m., Brown can be seen pointing the can towards the defensive police line, and deploying the spray for several seconds, in the direction of police officers. FBI agents having reviewed the footage, assessed that the spray was a pepper or a similar chemical spray.

8



*Figure Five*

In a YouTube video titled "Scenes of Chaos Captured Inside U.S. Capitol as Crowd Challenges Police," at approximately 20:05 minutes, a hand can be seen holding and subsequently deploying a can of spray irritant into the crowd of officers, who are attempting to restrict access to the U.S. Capitol through the exterior door to the Lower West Terrace, as depicted in *Figure Six* below. The spray irritant is deployed towards officers for several seconds. The individual who is seen holding the spray, is assessed to be Brown, based on the similarity in clothing and positioning to the above photograph, *Figure Five*.



*Figure Six*

At approximately 21:03 minutes, in the YouTube video, Brown was at the front of the rioting crowd, in the tunnel, participating in pushing and shoving action against officers, who were attempting to restrict access to the U.S. Capitol, through the exterior door to the Lower West Terrace, as depicted in *Figure Seven* below.  During this period, an MPD officer ("Officer Victim 1"), was at the front of the police line. This officer was being pressed between the crowd of rioters and the line of police officers. The officer's gas mask was ripped off by another rioter and blood can be seen in his mouth.



*Figure Seven*

On February 1, 2021, a U.S. Magistrate Judge in the District of Columbia, signed Federal Search Warrant electronic evidence account(s) associated with Gina Bisignano, based on Bisignano's presence inside the U.S. Capitol on January 6, 2021. FBI reviewed two videos, titled IMG_5082 and IMG_5083, which were obtained pursuant to the warrant. The videos are 7 seconds and 15 seconds long, respectively, and depict the crowd of rioters in the Lower West Terrace of

the U.S. Capitol on January 6, 2021. In the videos, Brown was at the front of the crowd participating in the pushing action against officers who were attempting to restrict access to the U.S. Capitol through the exterior door to the Lower West Terrace. According to metadata, the videos were created on January 6, 2021 at approximately 8:11:37 p.m. UTC (3:11:48pm EST) and 8:11:48pm UTC (3:11:48 p.m. EST).  *Figure Eight* below is a screenshot from the video evidence.



**E.      Jeffrey Brown's Arrest**

On August 26, 2021, FBI arrested Defendant at his residence in Santa Ana, California.  At the time of his arrest, he was renting a room for which he had difficulty recalling the physical address.  FBI searched his room and his vehicle and found the following:

- In his vehicle, agents found pepper spray, a bat, a taser, and a receipt for bear spray;

- In his room, they found more pepper spray, a jacket that appears to be the one he wore on January 6, 2021, multiple devices (including at least three cell phones), ammunition, flex cuffs/zip ties, and broad-tipped arrows (pictured below, *Figure Nine*).



## II.     **Argument**

## A.   **Applicable statutory authority**

Title 18, U.S.C. § 3145(a) states:

> **(a) Review of a release order** - If a person is ordered released by a magistrate, . . .
>
>> **(1)** the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .
>
> The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not raised previously. In short, the Court may proceed as best enables it to resolve the question posed:  whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community? As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[2]

---

[2] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts

18 U.S.C. § 3142(f)(1) advises that the Court "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community … in a case that involves … (A) a crime of violence…for which a maximum term of imprisonment of 10 years or more is prescribed."

"Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) in part as "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another or (B) any other offense that is a felony and that, by its nature, involves substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  Defendant's assault with a dangerous weapon on law enforcement is a crime of violence pursuant to 18 U.S.C. § 3142(f)(1)(E).  Defendant has been charged with multiple violence offenses under 18 U.S.C. § 111 and 18 U.S.C. § 1752.

Under 18 U.S.C. § 3142(g), the judicial officer shall similarly consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community – an inquiry that considers (1) the nature and

---

adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . ***This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

circumstances of the offense charged, (2) the weight of the evidence, (3) his history and characteristics, and (4) the nature and seriousness of the danger posed by his release. The United States seeks detention because no combination of conditions will assure that the defendant will not pose a danger to the safety of the community.

**B. The factors under 18 U.S.C. § 3142(g) weigh in favor of detention.**

The government proffers the information contained below in support of establishing the requisite clear and convincing evidence requiring the defendant's detention.

*i.     The Nature and Circumstances of the Offense*

The defendant's crimes are serious and cannot be viewed in isolation—he was one of thousands of individuals who descended upon the Capitol on January 6 to obstruct a cornerstone process of our democracy. The defendant was not just a part of the crowd or someone who got caught up in the moment. He travelled to Washington, D.C., and coordinated with others via a Telegram chat—the purpose of which was to provide communications for others going to DC on January 6th and who were "ready and willing to fight."  He was at the front of the crowd that assaulted police lines in the Lower West Terrace tunnel, repeatedly shoving officers. He stood in front of police and aimed and sprayed a chemical irritant at them.

This Court has outlined specific offense characteristics that serve as guideposts relevant to assessing the comparative culpability of each defendant in relation to the other rioters. *United States v. Chrestman*, No. 21-MJ-218 (ZMF), 2021 WL 765662, at *7 (D.D.C. Feb. 26, 2021). Almost all of the *Chrestman* factors put the defendant in a more serious category and demonstrate his dangerousness. First, he has been charged with a felony and crime of violence. Second, he engaged in prior planning before arriving at the Capitol. As his messages show, the defendant came to Washington, D.C. with the intention of participating in a "fight" and he did

engage in a violent battle.  When given the opportunity, he attacked officers with the mob of rioters in the tunnel.  As the Court said in *Chrestman,* "[t]hese motives and steps taken in anticipation of an attack on Congress speak volumes to both the gravity of the charged offense, as a premeditated component of an attempt to halt the operation of our democratic process, and the danger a defendant poses not just to the community in which he resides, but to the American public as a whole." *Id.* at *8.

Third, his actions demonstrated a dangerous hostility to law enforcement. The Court noted in *Chrestman*, "[g]rave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement…". *Id.*  The defendant repeatedly confronted police with, menacing behavior and an assault.

The nature and circumstances of his offenses therefore weigh in favor of detention.

### ii.      *The Weight of the Evidence Against the Defendant*

The weight of the evidence weighs in favor of detention. He is on camera spraying a chemical irritant at police officers and yelling at officers. He was photographed/video recorded from multiple camera angles.  The clothes he is wearing while he assaults officers matches his clothing in a social media post.  Multiple witnesses recognized the defendant in the videos and/or photos, including, who identified him as the individual in each of the nine photos contained in the criminal complaint. Collectively, there is strong evidence of guilt and a conviction is likely.

### iii.      *The History and Characteristics of the Defendant*

The defendant's characteristics do not inspire confidence that he will not pose a danger to the community.  For example, in December 2020, he was involved in a disturbance in a Costco Store in California to which law enforcement responded. While he was not charged or convicted, the incident demonstrates his lack of self-control. The video is publicly available here:

17

https://youtu.be/lSp3Ofwv1_o.  It should be noted that this disorderly conduct followed the 2020 U.S. Presidential Election, and that the defendant's behavior on that December day was not a "one-off" event, but rather a primer of what was to come in the next month, when he committed violence acts on January 6, 2021.

### C.  The Nature and Seriousness of the Danger to Any Person or the Community that Would Be Posed by the Defendant's Release

The second factor, the nature and seriousness of the danger to any person or the community posted by a defendant's release, also weighs in favor of Defendant's detention.  The charged offenses involve repeated violent attacks on law enforcement.  In addition, Defendant used his weapon, a chemical spray.

Given the above assessment of all four relevant factors, no conditions or combination of conditions can effectively ensure the safety of any other person and the community.

Based on these factors, anything short of detention would be insufficient to assure his appearance in D.C. and keep the community safe.

### CONCLUSION

WHEREFORE, the United States respectfully requests that the Court grant the government's emergency motion to stay the release order and grant the motion to detain Defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

By:      /s/ *Mitra Jafary-Hariri*
         MITRA JAFARY-HARIRI
         Assistant United States Attorney, Detailee
         MI Bar No. P74460
         211 W. Fort Street, Suite 2001
         Detroit, MI 48226
         mitra.jafary-hariri@usdoj.gov, (313) 226-9632

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-mj-565** |
| | **:** | |
| **Jeffrey Scott Brown,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| _____ | **:** | |

**ORDER**

Upon consideration of the Government's Motion for Emergency Stay and for Review and Appeal of a Release Order as to Defendant Jeffrey Brown,

It is this _____ day of August 2021,

**ORDERED**, that the Motion for Emergency Stay and for Review and Appeal of a Release Order is hereby **GRANTED**.

_____
BERYL A. HOWELL
CHIEF JUDGE, UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

19