**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-00178-APM** |
| | : | |
| **JEFFREY SCOTT BROWN** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

**OPPOSITION TO DEFENDANT'S MOTION TO**
**RECONSIDER BOND STATUS AND RELEASE PENDING TRIAL [ECF No. 75]**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to the defendant, Jeffrey Scott Brown, being released from pre-trial detention, and in opposition to his motion for reconsideration.  ECF No. 75.

First, Jeffrey Brown has been deemed a danger, such that no conditions or combination of conditions could secure the safety of the community, by the District Court for the District of Columbia—a decision that has been affirmed by the D.C. Circuit Court of Appeals.  *United States v. Brown*, 2021 WL 4033079 (D.D.C. Sept. 3, 2021) (*aff'd by United States v. Brown*, 2021 WL 5537705 (D.C. Cir. Nov. 17, 2021)).  Nothing has materially changed since the D.C. Circuit's opinion affirming Brown's detention.

Second, Brown's complaints regarding the discovery process at the Correctional Treatment Facility (CTF) are now moot, since he has been moved—for security reasons—to Central Virginia Regional Jail (CVRJ).

Third, even prior to his move to CVRJ, he has not been completely deprived of the opportunity to review evidence or to participate in his defense.  He has had some of the most

important pieces of evidence prior to the time he reported to the custody of the USMS, and despite the difficulties with reviewing discovery at the DC Jail, he is able to review the discovery in alternate ways.

Fourth, his release would not be justified at this point. The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

In this case, the defendant has not offered any "new" information and the information proffered is not material. His motion for reconsideration should be denied.

## BACKGROUND

The defendant was arrested in Santa Ana, California on August 26, 2021. He appeared before a California Magistrate Judge in a detention hearing on the day of his arrest and was released on bond. The Government appealed this decision to the District of Columbia (ECF No. 6). On September 3, 2021, the District Court Granted the Government's Motion to Revoke the Release Order (Dkt. 14). Defendant Brown unsuccessfully appealed the District Court's order. He has been in custody since September 7, 2021.

Once he arrived in DC, Defendant Brown was primarily held in the Correctional Treatment Facility (CTF) where his co-defendant Peter Schwartz has also been held. On February 18, 2022 a separation order between Jeffrey Brown and Peter Schwartz was entered, requiring one of them

to be moved.  Defendant Brown was moved to Central Virginia Regional Jail (CVRJ).

## ARGUMENT

### I.    The defendant presents no new and material facts justifying release

The Court can reconsider pretrial detention at any time before trial if the judicial officer finds that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2); *United States v. Bikundi*, 73 F. Supp. 3d 51, 54 (D.D.C. 2014). In other words, the statute requires that a movant provide information that is both "new" and "material." *See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

Previously available information—even if "material"—is not grounds to reopen a detention hearing. *See Lee*, 451 F. Supp. 3d at 5. And any "new" information is only "material" if it is "essential to, or capable of significantly affecting, the detention decision." *United States v. Worrell*, 2021 WL 2366934 at *9 (D.D.C. June 9, 2021); *see also Lee*, 451 F. Supp. 3d at 5 (stating that, for purposes of reopening a detention hearing, information has a "material bearing" on detention if it "casts different light on any of [the Bail Reform Act] factors," and citing Black's Law Dictionary (11th ed. 2019), which defines "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential.")).

Under the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141–3156, "Congress limited pretrial detention of persons who are presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." *United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999) (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987)). Thus, a

detention hearing must be held at the government's request only "in a case that involves" a charged offense falling in one of five enumerated categories, 18 U.S.C. § 3142(f)(1)(A)–(E), or if the defendant poses a serious risk of flight or of attempting to obstruct justice or threaten, injure, or intimidate a witness or juror, *id*. § 3142(f)(2)(A)–(B). The BRA "requires that detention be supported by 'clear and convincing evidence' when the justification is the safety of the community." *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). The District Court previously found that "Between Brown's egregious actions at the Capitol and his protest at Costco, the Court is convinced that releasing him would risk additional inappropriate and disruptive outbursts, combative standoffs, and even violence." Memorandum Opinion, *United States v. Brown*, No. 21-mj-565 ECF No. 14, pg. 17.

The defendant offers no new evidence that was not fully available at the time of his prior detention hearing. The defendant also argues that the conditions of his confinement support release, but does not cite any applicable legal authority in support of his motion, where here he has reviewed and has an opportunity to review his discovery.

## II.   The defendant's complaints about discovery access at CTF are now moot, as he is housed at CVRJ

Defendant Brown is now being held at CVRJ.  Presumably, the issues he faced with accessing discovery are now moot.  Counsel for Defendant Brown has multiple options to confer and review discovery with his client, according to the CVRJ facility.  Based on information from CVRJ, counsel for defendant can visit the inmate and review the discovery with the inmate.  To do so, counsel must simply contact the Captain (Chief of Security) for approval.[1]  CVRJ offers Video Visitation—including a non-recorded kiosk that counsel can use after setting up an account

---

[1] Counsel for the Government has conferred regularly with counsel for Defendant to assist in meeting with his client and learning the discovery process.  Counsel for Defendant has the name and contact information for CVRJ's Captain.

through Securis.  Finally, contact visits are also available for attorneys at CVRJ—subject to the inmate's covid/quarantine status for health and safety.

Considering Defendant Brown has just arrived to CVRJ recently, Defendant's motion is moot based on any of the issues that occurred at CTF.  At the same time, it would be premature as to CVRJ's discovery access.

## III.   The defendant has not been fully deprived of his discovery or his counsel, despite the difficulties faced at CTF

Defendant Brown was released immediately after his arrest between August 26 and September 7.  During that time, the Government produced a number of exhibits and information to his prior counsel—including some of the most crucial evidence against him, videos of his conduct.  It is important that he have a chance to review the full discovery if he wishes.  The manner in which he reviews it, however, is limited by his detention.  The Government does not dispute the lengths at which his current counsel has taken to allow Brown to review the discovery himself in the system that CTF had established.  But, the creation of the tablet/laptop system at CTF was not the *only* way for Defendant Brown to review discovery.  The system created by CTF did not eliminate counsel for defendant's responsibility to set up a meeting, bring his own computer, and review the discovery with his client. Nor have the issues at CTF prevented Defendant Brown from access to his counsel; they have been able to confer throughout the pendency of this litigation.

## IV.   The defendant has not demonstrated that the conditions at the Department of Corrections justify his release

The Defendant's claims do not establish that he is entitled to the relief he seeks. To be sure, the defendant is entitled to reasonable access to discovery and the opportunity to meaningfully confer with counsel. But the defendant cites no authority suggesting that his

complaints justify reopening the detention hearing and ordering his release.  Indeed, the concerns raised by the defendant are entirely independent of the factors this Court must analyze in making a detention decision under the Bail Reform Act—which has already come and gone in this case.

As this Court knows, on March 30, 2020, a civil complaint was filed in the United States District Court for the District of Columbia, on behalf of defendants detained at the Central Detention Facility and Central Treatment Facility (CTF), alleging that the D.C. Department of Corrections (DOC) was failing to take reasonable precautions to prevent the spread and severity of a COVID-19 outbreak.  That case, *Banks v. Booth* (20-cv-849), was assigned to another judge in this Court, who on April 19, 2020 issued a temporary restraining order (ECF No. 48), and on June 18, 2020, issued a preliminary injunction (ECF No. 100) that addressed, in part inmates' access to confidential legal calls in light of enhanced restrictions in place to address the pandemic, and ordered DOC to ensure that all inmates have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters, and to "swiftly implement to use of such technology" necessary to accomplish this (ECF No. 100 at 39).

On December 12, 2020, amici filed a report to provide information to the Court regarding DOC's compliance with the Court's June 18, 2020, preliminary injunction (ECF No. 138).  That report noted that the DOC had purchased significant amounts of new technology to facilitate attorney client communications, including through the use of cell phones from within their cells; and that the DOC facilitated more than 1500 such calls each month. The report also noted that DOC had purchased a number of tablets that inmates were permitted to use to review discovery and to communicate with their attorneys using secure messaging (ECF No. 139 at 42).  Finally, the report noted that the DOC facilitated 1,209 videoconferences between attorneys and their clients between May and October 2020 (Id. at 40-41).

On March 15, 2021, DOC issued a new procedure for voluminous electronic discovery. The policy would allow him to review electronic materials in his cell on a laptop provided by DOC. The government's position is that this procedure satisfies the requirements of the Protective Order regarding discovery in this case, so it would not limit the defendant's access to sensitive materials.

The defendant cites no authority—and the government is not aware of any—standing for the proposition that restrictive housing or any of the other conditions at the jail raised by the defendant entitle him to release under the Bail Reform Act, which is the relief he seeks in this motion. Yet the information he proffers does not meet the standard set out in the Bail Reform Act, whether to reopen the hearing or to support a decision to release the defendant on the merits.

To be clear, the government is committed to ensuring the safety all of inmates, regardless of their detention status. But it is also critical, from the government's perspective, to allow the issues to be properly litigated in their proper course. Civil litigation is the proper venue to address complaints of mistreatment by the jail. *See United States v. Brooks*, 2020 U.S. Dist. LEXIS 230323, at *10 (D.D.C. Dec. 7, 2020) ("As the government correctly rejoins, any such constitutional claim must be raised via a separate civil suit and cannot be part of a compassionate-release motion in the underlying criminal case. Courts all over the country have concurred."); *United States v. Smith*, 2020 U.S. Dist. LEXIS 213050, 2020 WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases); *see, also, e.g., United States v. Banks*, 422 F. App'x 137, 138 n.1 (3d Cir. 2011) (per curiam) ("We agree with the District Court that a motion filed in his criminal case was not the proper vehicle for raising the claims about prison conditions contained in that motion."); *United States v. Garcia*, 470 F.3d 1001, 1003 (10th Cir. 2006) (noting that, because the defendants' "challenge[s] to the conditions of confinement . . . were raised in motions

filed in their respective criminal cases . . . they were properly denied by the district court").

The proper way to raise such a claim is to file a civil suit against the Department of Corrections or its warden. *See*, e.g., *United States v. Folse*, Nos. CR 15-2485 JB, CR 15-3883 JB, 2016 WL 3996386, at *15 (D.N.M. June 15, 2016) ("The general rule is that a defendant must file a separate civil action to address his conditions of confinement."); *United States v. Luong*, No. Cr. 99-433 WBS GGH, 2009 WL 2852111, at *1 (E.D. Cal. Sept. 2, 2009) ("As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties . . . rather than a motion in his criminal case."); *United States v. Wells*, Cr. No. 3:02CR-20-H, 2007 WL 3025082, at *2 (W.D. Ky. Oct. 15, 2007) ("[T]o the extent Wells is challenging his condition of confinement by claiming that his life is in danger, the appropriate course would be to file a civil action against the alleged wrongdoers, not a Rule 60(b) motion in his criminal action."); *Campbell v. McGruder*, 416 F. Supp. 100, 101 (D.D.C. 1975) (addressing "class action brought by unconvicted pre-trial detainees incarcerated at the District of Columbia jail"). Here, the District Court and Circuit Court have considered the Bail Reform factors and ordered him detained.  Those rulings should not be disrupted.

## **CONCLUSION**

The defendant has not proffered any new facts that would materially alter the

decision to detain the defendant.  For the foregoing reasons, and any as may be cited at a hearing

on this motion, the defendant's motion should be denied.


Respectfully submitted,


MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:      /s/ *Mitra Jafary-Hariri*
MITRA JAFARY-HARIRI
Assistant United States Attorney, Detailee
MI Bar No. P74460
211 W. Fort Street, Suite 2001
Detroit, MI 48226
mitra.jafary-hariri@usdoj.gov, (313) 226-9632

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-cr-178** |
| | **:** | |
| **Jeffrey Scott Brown,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| _____ | **:** | |

## ORDER

Upon consideration of the Defendant Jeffrey Brown's Motion to Reconsider Bond Status

and Release Pending Trial,

It is this _____ day of March 2022,

**ORDERED**, that the Motion to Reconsider Bond Status and Release Pending Trial is hereby

**DENIED**.

_____
AMIT P. MEHTA
DISTRICT JUDGE, UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

10